[No. 13494. In Bank. — September 12, 1890.]

COLUSA COUNTY, Respondent, *v.* D. A. HUDSON, Appellant.

Eminent Domain — Opening Public Highway — Compensation — Cost of Fencing — Question for Jury. — In proceedings brought to condemn a right of way for a public road, where the owner of the land claims that the cost of erecting and maintaining a fence on each side of the proposed highway is an essential item of damage caused by the opening of it, it is for the jury to say whether the land is adapted to any purpose that would pay for the cost of fencing; and if they find that it is not so adapted, the cost of fencing the road cannot be allowed as an item of compensation to the defendant.

Id. — Conclusiveness of Verdict — Justice of Award. — That the finding of the jury as to the amount of damages to be awarded to the defendant, in cases of eminent domain, may be unjust, will not affect the conclusiveness of the verdict, if it can be sustained in any aspect of the evidence.

Id. — Compensation for Private Road Taken for Public Highway. — In assessing the damages for the property taken in such proceedings, the owner of the land is entitled to compensation for the value of a private road, as an improvement, which he had constructed and graded, and which was proposed to be taken and used as a part of the public high-

way; and the defendant cannot be limited to the value of the land, as if it were so much grazing-land, wholly unimproved, nor can the fact that defendant will have a public way in place of his private road be considered.

APPEAL from an order of the Superior Court of Colusa County denying a new trial.

The facts are stated in the opinion of the court.

*B. F. Howard, A. G. Dyas,* and *McKune & George,* for Appellant.

*H. M. Alberry,* for Respondent.

BEATTY, C. J. — This is a proceeding to condemn a right of way for a public road. After the usual proceedings for viewing and laying out the road, and refusal of the defendant to accept the compensation awarded by the commissioners and board of supervisors, this action was commenced by the district attorney, and tried by the court and a jury, to which were submitted several special issues concerning the question of damages and benefits. The jury awarded fifty dollars for the value of the land to be taken for the proposed road, one hundred dollars as damages to the land not taken, and found that the land not taken would be benefited in the amount of fifty dollars. Upon this verdict and additional findings by the court, a decree was entered condemning the land for the right of way, awarding the defendant one hundred dollars damages; and that being the precise sum previously awarded by the board of supervisors and refused by the defendant, the plaintiff had judgment for the costs of the proceeding, amounting to over two hundred dollars. Defendant moved for a new trial. His motion was overruled, and the appeal is from that order.

It appears from the bill of exceptions that the defendant's land is a mile in length, by a quarter of a mile in width, containing one hundred and sixty acres, and extending across a high ridge of hills; that prior to the

laying out of the proposed highway the defendant had a private road graded through his land from end to end, and crossing the ridge on the same route; that the highway was laid out twenty feet in width, on each side of the center of said private road.   The evidence as to the character and value of defendant's land, the uses to which it is adapted, and the necessity of fencing it for any use of which it is susceptible, is very conflicting. Some of the witnesses for the plaintiff think the land is not worth more than a dollar and a quarter an acre; others put it higher, some estimating it at four dollars. But those who put this valuation upon it base their estimate upon the value of the timber, for which it is worth as much without as with an inclosure.   The plaintiff himself values the land at seven dollars an acre for agricultural and horticultural purposes, to which he says it is adapted, and says that it is necessary for these purposes, as well as for grazing, to fence it.

It appears, however, that although he had resided on the land four years he had never attempted to inclose more than two or three acres prior to the service of summons in this proceeding, though about that time he commenced, and at the date of the trial had partially completed, the inclosure of forty acres more.   He says that it is and has been his intention to inclose the entire tract; that the cost of such exterior fence would be from twelve to fifteen hundred dollars; and that the cost of the additional fencing which would be rendered necessary by the opening of a public road through the land would be at least one thousand dollars.   The plaintiff's witnesses generally say that defendant's land is valuable only for grazing and the timber that may be cut from it; that for grazing purposes it might be useful to fence it, but that the owner could afford none but the cheapest kind of a fence.   And several of them testify that any fence sufficient to turn stock would cost more than the land is worth, and consequently that with or

without the proposed highway the defendant could never afford to inclose it.

The defendant objected to all testimony tending to prove that his land was not worth fencing, and excepted to the rulings of the court admitting it. Upon these exceptions, and upon exceptions to the charge of the court to the jury, to the effect that if they found from the evidence that his land without the proposed road was not worth fencing for any purpose to which it could be put no damages could be allowed for cost of fencing, defendant presents the principal question involved in his appeal. He contends, as we understand his contention, that he is the sole judge whether it is necessary or profitable to fence his land, and that it cannot be left to a jury to say that the land is not adapted to any purpose that would pay for the cost of fencing; that, having shown that some of the land is susceptible of cultivation, and all of it adapted to grazing, for which purposes fencing is useful, the cost of erecting and maintaining a fence on each side of the proposed highway is an essential item of damage caused by the opening of it, and must be allowed, notwithstanding the opinion of witnesses and the finding of a jury that if the highway were not opened the land would not for any purpose justify the expense of inclosure. The authorities do not sustain this contention.

Whatever may be the facts of this case, it is easy to suppose such a case as the witnesses for the plaintiff testify to, — a case in which a tract of land is not worth inclosing for any use to which it can be put. As such land will never be fenced except in obedience to some whim of the owner, which the legislature is not bound to regard, it is evident that the opening of a highway through it will not involve the necessity of erecting fences; the only effect would be to make an inclosed lane through uninclosed land, and it would be absurd to allow the cost of erecting and maintaining such fences as an item of damages. If such a case may arise, it

follows necessarily that its existence must be left to the determination of the tribunal established by the constitution and the laws for the estimation of the damages to be awarded for property taken for public use. Every objection that can be urged against the submission of such a question to the decision of a jury can be urged with equal effect against the whole scheme and doctrine of the law of eminent domain. It may be true that the finding of a jury upon the question of the necessity of fencing will in some cases operate most unjustly against the owner of the land. It is equally true that the finding as to the damages in any case may be unjust. But the necessity of taking private property for highways and other public uses is paramount, and must always remain so; and until some better and safer method of ascertaining the compensation to be awarded to the owner is devised, we must be content to abide by the verdict of an impartial jury, notwithstanding the possibility that injustice may sometimes be done.

As to this particular question, the law is correctly stated in Lewis on Eminent Domain, sec. 498, as follows: " Where by taking a part of a tract additional fencing will be rendered necessary in order to the reasonable use and enjoyment of the remainder, as it probably will be used in the future, and the burden of constructing such additional fence is cast upon the owner of the land, then the burden of constructing and maintaining such fence, in so far as it depreciates the value of the land, is a proper element to be considered in estimating the damages. In some of the cases cited an allowance was made for the cost of fencing as a specific item, and the language of many of the decisions seems to warrant the same view; but this is clearly not correct, unless such an allowance is required by the statute under which the proceedings are had. It is a question of damages to the land, as land. If, in view of the probable future use of the land, additional fencing will be necessary, of which the jury or

commissioners are to judge, and the owner must construct the fence if he has it, then the land is depreciated in proportion to the expense of constructing and maintaining such fencing. Nothing can be allowed for fence, as fence. The allowance should be for the depreciation of the land in consequence of the burden thus cast upon it."

The case of *Butte County* v. *Boydston*, 64 Cal. 110, which is cited and relied on by both appellant and respondent, is in perfect accord with the foregoing statement of the law. The only point there decided was, that the defendant was entitled to prove, if he could, the necessity of fencing; and if he did prove such necessity, that the cost of additional fencing rendered necessary by the opening of the road was an item of damages. Aside from the point decided, all that was said in the opinion of the court is consistent with, and in fact implies, the proposition that the question as to the utility or necessity of fencing the land is for the jury. We see no error in the rulings of the superior court in relation to this question.

The other principal question in the case relates to the claim of the defendant for compensation for his private road, the value of which, as an improvement, he offered to show. The superior court excluded all evidence as to the value of this road, holding, in effect, that the land to be taken must be valued without any reference to the existence of the road, and just as if it were so much grazing-land wholly unimproved. In this case we think the court erred. If a man had constructed a bridge across a stream on his own land, and for his private use, and if the county should lay out a highway to cross on that bridge, it would scarcely be contended that the county could condemn the bridge for the public use, without paying its reasonable value. We do not see that there is any distinction in principle between the bridge in the case supposed and the defendant's graded road in this case. The grade is there. It must have

cost something, and is no doubt of some value. The county proposes to take it and use it as a part of the highway. If its existence will make the construction of the highway any less expensive, the county will get the benefit, and ought to pay the value. The fact that defendant will have a public way in place of his private road is no answer to this proposition. He will enjoy the highway in common with the general public, and must pay his share of the cost. In so far as the highway is a benefit to him, he is chargeable, and has been charged, with the value of the benefit. If he contributes to the construction of the road an improvement in the shape of a mile or more of grading, he is entitled to the value of that improvement, and it was error to exclude evidence as to such value. We see no other error in the record, but for the reasons stated the order appealed from must be reversed, and the cause remanded for a new trial. It is so ordered.

McFARLAND, J., PATERSON, J., WORKS, J., FOX, J., THORNTON, J., and SHARPSTEIN, J., concurred.