Presiding Judge Scott
delivered the opinion of the court.
This is an appeal from the judgment of the district court in a condemnation proceeding involving the right of way for an irrigation ditch.
*121 Tlie judgment appealed'from after reciting tlie amount of damages to be allowed the appellants, by the commissioners theretofore appointed, to-wit: $175.00, as having been regularly and properly ascertained and determined and having been theretofore paid into court for the use of appellants, rendered judgment as follows-:
“Now, therefore, it is ordered that the said petitioner shall be and become seized in fee of the following described land, and ¿hat it may take possession of and hold and use the same for the purpose specified in said petition, and that it shall thereupon be discharged from all claims for any damages by reason of any matter specified in such petition and certificate of commissioners, that is to say: A strip of land extending through the northwest quarter (nw¼) of section 26 and through sections 23 and 13, all in township 10 north, range 70 west of the 6th P. M. in Larimer county, Colorado, the same being one hundred (100) feet in width; fifty (50) feet on either side of the center line of a certain ditch' now constructed thereon, which line is described as follows: Commencing at a point on the canal of the North Poudre Irrigation Company whence the southeast corner of section 22, township 10 north, range 70 west of the 6th P. M., bears north 61 degrees, 21 minutes east 1190 feet; thence in a general northeasterly direction to a point 1812 feet east of the quarter corner on the west side of section 13, township 10 north, range 70 west of the 6th P. M., at which point the said constructed ditch terminates ; and also continuing from the said last mentioned point, a strip of land one hundred (100) feet in width, being fifty (50) feet on either side of a line *122 described as follows: From the end of said ditch •above described, thence north 9 degrees, east 545 feet, thence north 32 degrees, east 300 feet to a natural ravine or gulch following the center line or thread of said ravine in a northeasterly course 3884 feet to a point on the east line of section 13, township 10 north, range 70 west, 378 feet south of the northeast corner of said section 13; the said land so to be taken being 38.36 acres.”
It further appears that the condemnation proceeding was instituted in compliance with the direction of the court, in a judgment before rendered in an injunction proceeding, wherein the appellants sought to enjoin the appellee from entering upon and using said lands and a certain ditch or excavation, the land in question, alleged to.be the property of the plaintiff.
The findings and judgment of the court in that proceeding were as follows:
“And the court having heard the evidence adduced by the plaintiffs and the defendant as well, touching the allegations contained in the complaint and answer and being now fully advised in the premises doth find: That the equities herein are with the plaintiffs; that the allegations in the complaint contained are true; that the work of the construction of the Scurvin ditch was begun about the year 1885 and that the same was never completed, but that the same was abandoned by the original projectors of the said ditch, more than twenty years prior to the commencement of this action; that no easement was obtained by the original builders of said ditch through, over and across the land now .owned by the plaintiffs; that neither the North *123 Poudre Land, Canal and Reservoir Company, or its successors in interest liave done any work on the said ditch from the date of the cessation of work thereon in the year 1887, until the defendant entered thereon in May, 1908, to repair and complete the said ditch.
That the defendant herein obtained no right to possession of the said ditch, or right of way by virtue of its deed, dated April 8, 1908, from the North Poudre Irrigation Company, successor to the North Poudre Land, Canal and Reservoir Company, the original builder of said Scurvin ditch; and the said defendant, The Scurvin Ditch Company, should be enjoined during the pendency of this action and until the final hearing herein, from further occupancy or possession of the said ditch and right of way, as the same traverses the lands of the plaintiffs as herein above mentioned, and:
THEREFORE, It is ordered, adjudged and decreed, that the defendant, herein The Scurvin Ditch Company, forthwith refrain from further occupying the line of ditch commonly known as The Scurvin ditch, as the same traverses sections 13, 23 and the northwest quarter (nw]4) of section 26, township 10 north, range 70 west; unless forthwith the said defendant shall elect to file its petition in condemnation to condemn a right of way for said ditch, as the same traverses the aforesaid lands; and thereupon the Scurvin Ditch Company files in this court its petition in eminent domain, being No. 2313 of the files of this court to acquire the said right of way, to have adjudged the compensation therefor and the damages to be assessed in the manner provided by law, and in said proceeding this day obtains its *124 order for temporary possession of the said right of way upon making the deposit in the registry of this court, as by the order in said case provided; and thereupon it appearing to the court that the matters in litigation between the parties hereto in the pending cause have been fully adjudicated and determined and nothing further remains to be done in this action;
Therefore, It is ordered that the said action be dismissed at the cost of the defendant.”
There was no appeal from this judgment; the condemnation proceeding was then instituted, and commissioners duly appointed who made report with the following findings:
“That the value of the land of the respondents actually taken is $115.00 (one hundred fifteen dollars).
That the damage to the residue of the land of the respondent is $160.00 (one hundred sixty dollars).
That the amount in value of the benefits to respondent is $100.00 (one hundred dollars).
• In making the above award we have not considered the value of the ditch excavation heretofore constructed upon said land.”
Thereupon the appellants filed their verified motion to set aside and vacate the report and findings of the commissioners, and in addition to the facts heretofore set forth, alleged:
“That the respondents herein are the owners and in occupancy of section twenty-three (23), the northwest quarter - (nw%) of- section twenty-six (26), and section thirteen (13) in township ten (10) *125 north of range seventy (70) west, Larimer county, Colorado.
That in the years 1885, 1886 and 1887 there was partially constructed across the lands above mentioned by one Scurvin, a ditch excavation, said Scurvin being a contractor as respondents are informed and believe, of one F. L. Carter Cotton. That the work of said ditch was abandoned by the said Carter Cotton and the said Scurvin, more than twenty years ago, and that said work remained in said abandoned state and condition, unused by any persons whatsoever, until after respondents herein acquired title to said land, and until the winter of 1906 and 1907 when said respondents worked upon said ditch and enhanced its value with the expectancy and intention of using said ditch for the carriage of water. ’ ’
That “in due course the said commission proceeded .to take and hear testimony as to the value of the land-and the compensation which was proper to be allowed the said Roberts Brothers, and at said hearing the said respondents offered evidence tending to show that the said ditch excavation herein-before referred to, the same being the property of the said Roberts Brothers, had originally cost to construct, a large amount of money, to-wit, about $10,000.00. That the same had a reasonable market value of a large sum of money, about $3,000.00. That the said Roberts Brothers had done work heretofore toward completing and repairing said excavation, expecting and intending to use it for irrigation purposes, and that said excavation would be a saving to the said Scurvin Ditch Company of .approximately ten thousand dollars ($10,000.00). Testimony was *126 further introduced and it was admitted by the officers of the Scurvin Ditch Company that the work of building and constructing the ditch across said lands would not have been undertaken by them, had they not expected to utilize said excavation and receive the benefit of said excavation, and save the cost of construction thereof and that the Scurvin Ditch Company had undertaken its irrigation project under the belief that they were the owners of said excavation. ’ ’ And further,, that:
“Respondents would further show that at said hearing Paul ~W. Lee, Esquire, attorney of record and appearing at said hearing for the Scurvin Ditch Company and L. C. Moore, the president of said Scurvin Ditch Company, over the objection of counsel for the respondents herein, stated to the members of this commission that this honorable court had, upon a hearing upon tire application for the injunction. in the case of The Roberts Brothers against The Scurvin Ditch Company, as hereinbefore referred to, ruled that the said Roberts Brothers were not entitled to any compensation by reason of the fact that there existed an excavation across said lands as above mentioned, and respondents would further show that in computing the amount of damage to be allowed the said respondents and the compensation to be awarded them for a right' of way across said lands, the said commission did not consider the value of the ditch excavation hereinbefore referred to, as appears from their report on file herein.”
The record does not show that there* was any denial or reply filed to this, verified motion, or that any testimony was taken concerning the same. So *127 tlxat it appears here simply upon objection to action of the court in denying the motion to set.aside the findings and award of the commission, and the rendition of the judgment thereon.
It will be seen that from the judgment in the injunction case which became final, the appellants were the owners in fee of the premises, and that the appellees at that time had no right therpin, nor any easement thereover or thereon. It also appears from the verified motion to set aside the appraisement and award, that at the time of all the court proceedings above, that there was upon the premises so to be condemned a ditch excavation which oi'iginally cost to construct about $10,000.00 and which was of the reasonable market value of $3,-000.00, and which might be, and was intended to be, used by the appellants for an irrigation ditch' to be constructed by themselves.
That this excavation was not taken into consideration by the commissioners, appears clear from the report which expressly recites:
“In making the above award we.have not considered the value of the ditch excavation heretofore constructed upon said land. ’ ’
It seems from the statements of counsel on both sides that the lands in question were owned by the Union Pacific Railroad Company, and that one F. L. Carter Cotton secured a contract of purchase, and while so holding organized an irrigation company which proceeded to make the excavation in question; that the land was afterward forfeited to the railroad company, and that the ditch was abandoned about twenty years before the injunction suit, *128 and at which time appellants were the owners of the property in fee.
Just when, or from whom, or how appellants acquired title does not appear.
The situation is then, that appellants were the owners of a certain tract of land upon which there was a ditch excavation, useful for the purposes designed by appellee, and to be used by them, and to which they were awarded by the decree and easement, but a ditch which had been constructed at a large cost, prior to the securing of title by appellants.
Then under these circumstances were the appellants entitled to have the value of this excavation considered by the commissioners in their finding and award, from which this is an appeal.
The circumstances are so varied as to make it difficult to lay down any fixed rule applicable in all cases as to the method of determining the value by appraisement of property to be condemned for public use.
The general rule in this regard as stated by Mr. Justice Field in the case of Boom Co. v. Patterson, 98 U. S., 403, seems to be generally accepted, as follows :
“The inquiry in such cases must be what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses? Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others *129 may be able to use it, and make it subserve the necessities or conveniences of life. Its capability of being made tlius available gives it a market value which, can be readily estimated.”
This was a case where the land owner had three islands in the Mississippi river, specially fitted and located to from a boom for holding logs.
The proceeding for condemnation arose in the state conrts and after the commission appointed, had made the award, was -transferred to the United States court. The award by the commissioners was $3,000.00 from which appeal was taken. The jury in the federal court allowed $300.00 for the land used and $9,058.33 for its value for boom purposes. The court refused a new trial upon condition that the judgment be reduced to $5,500.00 and this judgment was affirmed in the case cited. The court said:
“The position of the three islands in the Mississippi fitting them to form, in connection with the west bank of the river, a boom of immense dimensions, capable of holding in safety over twenty millions of feet of logs, added largely to the value of the lands. The Boom Company would greatly prefer them to more valuable agricultural lands, or to lands situated elsewhere on the river; as, by utilizing them in the manner proposed, they would save heavy expenditures of money in constructing a boom of equal capacity. Their adaptability for boom purposes was a circumstance, therefore, which the owner had a right to insist upon as an element in estimating the value of his lands.” Boom Co. v. Patterson, 98 U. S., 403.
Colusa County v. Hudson, 85 Cal., 633, was a case where the land condemned was to be used as a *130 public road and tbe court uses an illustration which in principle seems to apply here as follows:
“If a man had constructed a bridge across a stream on his own land, and for his private use, and if the county should lay out a highway to cross on that bridge, it would scarcely be contended that the county could condemn the bridge for the public use, without paying its reasonable value. We do not see that there is any distinction in principle between the bridge in the case supposed and the defendant’s graded road in this case. The grade is there. It must have cost something, and is no doubt of some value. The county proposes to take it and use it as a part of the highway. If its existence will make the construction of the highway any less expensive, the county will get the benefit, and ought to pay the value. The fact that defendant will have a public way in place of his private road is no answer to this proposition.”
In the case of Railway Co. v. Murphine, 4 Wash., 448, it was urged that the trial court erred in permitting testimony to show the value of the land for the growing of hops, in that hops had never been grown on the land, although it was shown that the land was adapted to such crop. The court held this not to be error and said:
“The market value of property is its value for any use to which it may be adapted, and in estimating its value all the uses of which the property is susceptible should be considered, and not merely’ the condition in which it may be at the time and the use to which it may have been put by the owner.” Lewis on Em. Domain, 478.
In a proceeding to condemn land for the pur *131 pose of a reservoir, it was held in San Diego Land Co. v. Neale, 78 Cal., 63, that evidence of the value of the land as a reservoir site was admissible although it had never been used for such purpose. This case cites many cases in support of the court’s conclusion, and which tend to sustain the contention of appellants in this case.
In Railway Co. v. Canal Co., 34 Hun., 116, a proceeding to condemn a tract of land for canal purposes, the court said:
“The strip of land was practicable and desirable for the route of a railroad. The respondent was holding it for use or for sale for that purpose. The petitioner, in the construction of its railroad, wanted this property. It became simply a question of its value for the use and purpose for which it was owned and held by respondent, and wanted by petitioner. If an unimproved water-power would be destroyed by the location of a railroad, ought not the owner to be compensated therefor? No doubt can exist. The damages would be, not the value of the use to the-owner in its unimproved condition, but the market value of the property of water-power, having reference to the use which could reasonably be made of it. The rule should be the same in the present case. Here was' a narrow strip of land formerly used as a way and only of value for a way. The owner holds it for such purpose only, expecting the time will presently come when he can utilize it to his own profit or sell it to some one else for such purpose. ’Why then are not the purposes for which it is held and the uses to which it is adapted, proper elements in its value? We think they are, and that the commissioners did not err in assessing compensa *132 tion upon the basis of its value for railroad purposes.”
So in this case the appellants were holding the land with the constructed ditch, suitable, and constructed for irrigation purposes and intended to be used for such purpose'by them. The above citation is precisely in point.
This doctrine is sustained in, Colorado Midland Ry. Co. v. Brown, 15 Colo., 193, wherein the appellee was permitted to show the market value of the water-power, and its adaptibility to the operation of mining machinery, and electric motors in and about the city of Aspen, though not so used at the time.
The court in that case laid down the rule for recovery in such cases as follows:
“Compensation for the land or property actually taken equal to the true and actual value thereof at the time of the appraisement.
Damages to the residue of the land or property not taken, equal to the actual diminution of its market value, if any, for any use to which the same may reasonably be put; and in determining such damages the use to which the property taken is subjected, and the loss and inconvenience thereby occasioned, may be taken into consideration, as the construction and operation of a railroad. Eminent Domain Act (approved Feb. 12, 1877), sec. 17; City of Denver v. Bayer, 7 Colo., 113; Railroad Co. v. Allen, 13 Colo., 229; Lewis Em. Dom., secs. 478, 487; Railway Co. v. Vance, 115 Pa. St., 331; Johnson v. Railway Co., 111 Ill., 413; Weyer v. Railroad Co., 68 Wis., 180.” See also Ry. Co. v. Griffith, 17 Colo., 599.
The appellee cites a line of authorities holding *133 that where a corporation vested with the power of eminent domain enters upon lands and places improvements thereon, such as pipe lines, railroad tracks, etc., that these do not become a part of the realty and may be removed, or that in case of, after condemnation by such corporation, the land owner is not entitled to the value of these as a part of his compensation.
This is another and different rule and can not apply in this case.
In the first place the ditch is simply an improvement in the matter of change in the form and location of the soil itself, and, secondly, it was judicially determined, before the condemnation proceeding was instituted:
“(a) That no easement was obtained'by the original builders of the ditch over and across the lands now owned by the Roberts Brothers.
(b) That neither the original projector nor its successor in interest did any work on said ditch from the date of cessation of work in 1887 until The Scurvin Ditch Company entered thereon in May, 1908.
(c) That The Scurvin Ditch Company obtained no right to possession of said ditch or to the right of way by virtue of its deed, dated April 8, 1908, from. The North Poudre Irrigation Company, the successors of the original projector.”
'The appellee therefore stood in the same relation to the land as would any other corporation vested with the right of eminent domain in a proceeding to obtain the right of way for a public purpose, and must be held to pay the market value of the lands taken for the purpose for which it was *134 suited, whether used for such purpose at the time or not.
Decided April 8, A. D. 1912.
Rehearing denied June 10, A. D. 1912.
Judgment reversed, with instruction to sustain the motion to set aside the commissioners report, and proceed in accordance with the views herein expressed.
All the judges concurring.