[No. 24062. Department One. December 22, 1932.]

PACIFIC COUNTY, *Respondent*, v. NORTH PACIFIC IMPROVEMENT COMPANY *et al.*, *Appellants*.[1]

'Reported in 17 P. (2d) 40.

644

*James L. Hope* and *Welsh & Welsh,* for appellants.

*John I. O'Phelan* and *John J. Langenbach,* for respondent.

HOLCOMB, J.—These two actions were consolidated in the trial court for trial and for appeal. In the first case only P. J. McGowan & Sons and in the second case only the North Pacific Improvement Company are appealing.

Orders of necessity had been granted in each case, and the cases were tried in the superior court to a jury as to the damages to be paid to the respective land owners for the appropriation of a right of way through their lands for a county highway.

The land appropriated belonging to P. J. McGowan & Sons was, approximately, 8.69 acres, and that appropriated from North Pacific Improvement Company was 32.88 acres.

Witnesses on behalf of respondent testified that the value of the land to be taken from appellants averaged between five and ten dollars an acre, and that there was some benefit to the land not taken by the establishment of the highway. Witnesses on behalf of appellants McGowan & Sons testified that the market value of their lands appropriated was $8,690; that, because of certain special damages to their lands not taken, their damages would make a total of $20,640. The jury allowed McGowan & Sons damages in the sum of $76.76. There was testimony on behalf of North Pacific Improvement Company to the effect that the uplands belonging to them were worth $114.20, the

shore lands taken by the appropriation were worth $21,450, and that the damages accruing to them by the taking would total $51,564.20. The jury allowed them damages in the sum of $225.75.

The highway established is located on the north shore of the Columbia river in Pacific county. The right of way extends about four miles east from Mc-Gowan at the southern terminus of the Ocean Beach Highway. The territory is largely unsettled, and the land adjoining the bank of the Columbia river is very rugged, rough and precipitous—in many places arising abruptly from the edge of the water. Over a portion of the right of way, the O. W. R. & N. Co. operated a railroad for many years, but a short time before the commencement of these actions, it had abandoned the right of way and removed its rails and equipment.

By agreement of the parties, the jury were taken to the location of the highway, where they inspected and viewed the premises. Part of the right of way being inaccessible from land, it was viewed from the deck of a boat.

Early in the trial, the court instructed the jury, after proof had been introduced of the abandonment of the railroad right of way, that whatever title existed in the property belonged to appellants by reason of such abandonment.

During the trial, appellants offered to prove the value of the land condemned for right of way purposes, and in connection therewith offered to prove that the value thereof was, approximately, $80,000, about $35,000 thereof being the property of P. J. McGowan & Sons and the balance thereof the property of the North Pacific Improvement Company; and that the improvements were placed thereon by the railroad company prior to the institution of the condemnation suits by respondent. It was stated that the offer of proof

was as to the value of the original roadbed, and also the value of the improvement for highway purposes that has been made and still exists, and the riprap at the edge of the water; that all the improvements were made by the railroad company and none by either of the appellants. Similar offers were repeatedly made during the trial.

The court denied these offers of proof, but advised counsel for appellants that they would be permitted to show the damage to appellants on account of the taking of the roadbed, the measure of damages to be determined by the market value of the land taken for road purposes, and the damage to the remainder. In other words, appellants would only be permitted to show the market value of the improved roadbed when sold to the general public; that appellants would not be permitted in this condemnation proceeding to sell the improvements to the county; that it would be allowed to show the value of these 'improvements by showing the fair price they could be sold for at the time of trial or in the reasonably near future.

At another time, in ruling upon an offer of proof by appellants to show that the right of way was peculiarly adapted for a right of way as the only one along the Columbia river where a road could be constructed, the trial court said:

"It is a question in the judgment of the court how much can the respondents [owners] turn this particular property at this time to an advantage to them. . . . they ought not to be permitted to hold the county up for an improvement there that has been made by somebody else, which is actually of no value to them and they cannot turn it to any advantage."

To the reason above given might have been added that, under our eminent domain theory, the railroad company, in acquiring the right of way for its

railway, must have either purchased or condemned it in proper procedure. There must have been some lawful acquisition thereof which would sustain its taking and a consideration therefor. Such being true, the right of way had once been purchased or acquired by the owner for a valid purpose, and when it abandoned its right of way it was of no further value to it; and the costs thereof could not, directly or indirectly, accrue to the benefit of appellants except as to the effect of such improvement on the market value of so much thereof as was appropriated. That was the meaning of the rulings of the trial court, which were eminently correct.

In one of the cases cited and relied upon by appellants, *Cohen v. St. Louis, F. S. & W. R. Co.*, 34 Kans. 158, 8 Pac. 138, 55 Am. Rep. 242, in which the court allowed damages to the land owner for the value of a railroad grade which had been constructed by one company, abandoned, and thereafter appropriated and occupied by another railroad company, the court held that the appropriating railroad company should pay as compensation to the land owner the value of the land as enhanced by the value of the grade. But the court also said:

"The owner of the land has no right to recover the amount of the *cost* of making such a grade, or the amount which the grade actually did *cost,* or the *benefit* which the land or the grade would be to the railroad company; for such is not the proper measure of his damages. . . . But, as before stated, he is entitled to recover *the exact market value of the land upon which the grade is constructed,* for whatever purpose such land might or could be used."

The above decision is contrary to the contention of appellant, in accord with the ruling of the trial court, and in consonance with our own decisions.

In *Ham, Yearsley & Ryrie v. Northern Pacific Railway Co.,* 107 Wash. 378, 181 Pac. 898, we reiterated the rule that the market value at the time of trial is the basis for compensation in condemnation proceedings. We quoted with approval from *Brack v. Mayor of Baltimore,* 125 Md. 378, 93 Atl. 994, Ann. Cas. 1916E, 880, that the market value was to be estimated with reference to the uses and purposes for which the land was adapted, and that any special features which may enhance its marketability might properly be considered:

"But the fact that the land is needed for the particular object sought by the condemnation is not to be regarded as an element of the value to be ascertained. The question is not what the property is worth to the condemning party, but what could probably be realized from its sale to any purchaser who might desire it for any or all of the purposes for which it is available."

On a subsequent appeal of the same case, 110 Wash. 467, 188 Pac. 527, we found it necessary to remand the case for further trial because the trial court had erred in receiving evidence and basing value on the storage capacity of the reservoir created or the necessities of the owner of the storage rights; stating that its value as a dam site depended on the relative cost of the dam on such site and its adaptability and advantages for such purposes. We emphatically reiterated the principle stated in the former appeal, *supra.*

There is nothing contrary to these principles in *Grays Harbor Boom Co. v. Lownsdale,* 54 Wash. 83, 102 Pac. 1041, 104 Pac. 267, or *Columbia & Cowlitz River Boom & Rafting Co. v. Hutchinson,* 56 Wash. 323, 105 Pac. 636.

In another case cited and relied upon by appellants, *Colusa County v. Hudson,* 85 Cal. 633, 24 Pac. 791, that court held that the land owner was entitled to com-

pensation for the value of a mile or more of private road which had been built across his own property and appropriated by the county as a public road. That is somewhat in line with the *Lownsdale* case, *supra*.

Another case relied upon by appellants, *Roberts v. Scurvin Ditch Co.*, 22 Colo. App. 120, 125 Pac. 552, involved the condemnation for irrigation purposes of an abandoned private irrigation ditch, "suitable and constructed for irrigation purposes." The court there held that the land owner was entitled to the market value of the existing ditch, as it was the only right of way available for irrigation purposes. None of the above cited cases are apt in such a case as this.

In an appropriation of land for public highways, it is to be presumed that the most suitable and available location is taken.

The trial court meticulously followed the law of eminent domain as announced by this court. An examination of its instructions shows that they were all in accord with our rule of decision, and requested instructions, rejected, were not.

■ Appellants also complain of an instruction to the effect that the county could, by condemnation, procure title only to the surface and sufficient of the soil beneath the surface to sustain the roadway; that it would not obtain title or possession to any minerals or other deposits beneath the surface of the soil except within that distance beneath the soil necessary to support the highway.

Appellants' contention as to this instruction is very confusing. They base their contention on Rem. Comp. Stat., § 927, which, among other things, provides that, after damages have been awarded and paid, the court shall enter a decree of appropriation for the land appropriated, thereby vesting "legal title" to the same in the appropriator.

The judgments entered in these cases contain the recital that Pacific county, Washington,

"Shall be and shall become the owner in fee of the lands and real estate and premises hereinabove described . . . to hold, . . . use and possess the same for highway purposes."

Undoubtedly, when a county acquires land for highway use, whether by fee or not, it has some kind of a legal title. It obtains title only to the surface and so much of the soil beneath to sustain the roadway. It obtains no title to minerals or other deposits beneath the surface. It is also fundamental that, upon vacating or abandoning the right of way for highway purposes, the surface thereof reverts to the owners. Consequently, whether the fee taken by the county is an absolute or conditional fee title, it is not necessary to decide. While the judgment of the trial court seems to be somewhat broader than the law, it is immaterial one way or the other. Nor can we see any reasonable grounds for prejudice in the instruction, or for complaint of the judgment.

Appellants also complain of misconduct on the part of the county attorney in argument to the jury.

After examination of the statements complained of and objected to by appellants, although they probably reached the limit of propriety, the jury were instructed to be guided solely by the evidence and the law as given by the court. We cannot say that the statements manifestly prejudiced the jury, and can find no just reason for reversal therefor. See *Slattery v. Seattle,* 169 Wash. 144, 13 P. (2d) 464.

Appellants also complain generally of the inadequacy of the verdicts in their favor, and in conclusion state they were "practically robbed" by the verdicts.

It is apparent from the statement of the facts heretofore made that there was an exceedingly great discrepancy between the testimony for appellants and for respondent. This was one of the grounds urged by appellants for a new trial. Therefore, it must have been considered by the trial court in passing upon the motions for new trials, which it denied. Moreover, the jury viewed the premises, and were thereby better able to judge of the credibility of all the witnesses, the value of the lands in question, and the damages or the benefits to the remainder.

We cannot say that the verdicts are so inadequate as to be without support in the evidence. The evidence was hopelessly conflicting. See *Norland v. Peterson,* 169 Wash. 380, 13 P. (2d) 483.

On a review of the whole record and the law applicable thereto, we can find no error justifying a reversal.

The judgments are affirmed.

TOLMAN, C. J., MITCHELL, and PARKER, JJ., concur.